(C. D. 1696)

TERRAZZO & MARBLE SUPPLY CO., INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided April 28, 1955)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff.
*Warren E. Burger*, Assistant Attorney General (*Joseph E. Weil* and *Henry J. O'Neill*, trial attorneys), for the defendant.

Before OLIVER, MOLLISON, and EKWALL, Judges

OLIVER, Chief Judge: The merchandise in question is described on the invoice as "Ordinary enamel small glass tiles," "Flesh enamel small glass tiles," or "Imperial enamel small glass tiles" and was assessed with duty at the rate of 50 per centum ad valorem under paragraph 218 (f) of the Tariff Act of 1930, as modified by T. D. 51802, supplemented by T. D. 51898, as articles of colored glass, not specially provided for. Plaintiff has limited its protest to the claim for classification under the provision for "Opal, enamel or cylinder glass tiles and tiling" in paragraph 231 of the Tariff Act of 1930, as modified by T. D. 51802, carrying a duty assessment of 20 per centum ad valorem. During the course of the trial, counsel for plaintiff made certain concessions that appear in the record as follows (R. 4):

In order to narrow the issue, I will concede that the items in question are a type of colored glass. I do not claim that it is error to regard these things either under the general caption of "manufactures of glass", or under the general caption of "colored glass articles". I claim, however, that the merchandise is a type of colored glass articles that is more narrowly and specifically provided for as "enamel glass tile".

This case is a retrial of the issue that was before us in the matter of *Terrazzo & Marble Supply Co., Inc.* v. *United States*, 30 Cust. Ct. 202, C. D. 1521 (hereinafter referred to as "the previous case"), the record in which was incorporated herein on motion by plaintiff and without objection from defendant. In "the previous case," the collector's classification was sustained in two separate opinions, which were in agreement to the effect that plaintiff had failed to establish that the merchandise in question is composed of enamel glass.

For a description of the articles in question, we quote from our decision in "the previous case," where we stated as follows:

Samples of the several items in question are before us (plaintiff's collective exhibits 1 and 2). The parties have agreed that these articles in their imported condition were loose and not glued or attached to any surface as they appear in the exhibits. These small pieces of glass are of various colors, each individual piece being a solid color and measuring approximately one-half inch long, three-eighths of an inch wide, and one-quarter inch thick. Some of the samples (items 195, 201, 202, 204, 207, 209) are composed of a bluish glass base with a silver or gold finish superimposed on the surface.

Supplementing the testimony in the incorporated record, plaintiff introduced in the present case the testimony of two witnesses. The first, Martin L. Wolf, was the author of a work titled, "Dictionary of the Arts," which contained the following definition of "enamel glass":

A fine variety of decorative *glass* that has had a coating of *enamel* applied to its surface during fabrication; the enamel may be white or colored depending upon the degree of *diffusion* desired. Also, glass that has been decorated with *vitrifiable* pigments, or painted according to the techniques of the *enamel* method. * * * [Italics quoted.]

The witness testified that the foregoing definition is "utterly and precisely correct without any exception whatever, except that the title of the term being defined bears a typographical error" (R. 13), and that "this should be past tense, 'enameled glass'" (R. 14). He stated further that the alleged error was due either to defective proofreading or defective original typing. This line of the witness' testimony loses all force and effect by his failure to produce, or even to recall, any of the source material that he used in his publication of the definition of "enamel glass," as hereinabove set forth. Questioned by the court in this connection, he testified as follows (R. 14–15):

JUDGE MOLLISON: When you made that statement, from what source material did you use in making the definition?
THE WITNESS: Your Honor, I have been trying to find that for more than two months. I used more than four thousand volumes, papers, interviews, and lectures in order to collate all that material into one book. I could not locate the source from which I derived that. It is not my own invention. This book is purely an editorial job of collating and briefing.
JUDGE MOLLISON: You do not now remember and you have not been able to locate any of the source material?
THE WITNESS: No. The manuscripts filled up two rooms, and I had to destroy it when I was sure the book was in print.
JUDGE MOLLISON: Did you in your book have a definition of "enamel glass"?
THE WITNESS: The definition which you just read to me is such a definition. There is no other.

The witness' attempt to discredit himself is not impressive. He stated that the reason for believing, now, that there is no definition of "enamel glass" is because "it is poor English. It is the grammatical problem that is prevailing upon me to make that change in the next edition." To give favorable consideration to the witness' testimony, and permit the substitution of the term "enameled," for "enamel," would not only attribute a useless and worthless act to Congress, which used the term "enamel glass" in paragraph 231 of the Tariff Act of 1922, as well as in paragraph 231 of the Tariff Act of 1930, but also would do violence to the judicial interpretation of the statutory provision for "opal, enamel, or cylinder glass tiles," as set forth in *M. E. Dey & Co., Inc.* v. *United States.* 61 Treas. Dec. 1779. Abstract

20788, and *Hawley & Letzerich* v. *United States*, 52 Treas. Dec. 666, Abstract 4269, cited in "the previous decision."

Another phase of the witness' testimony relates to the manufacture of glass in which either dye (colored powder) or enamel is used. In this connection, the witness stated that enamel has "a great deal of viscosity," and that it cannot be applied to glass in the molten state but must be used as a coating to the surface. He agreed with the statement in "Modern Glass Practice," by Samuel R. Scholes, appearing in the chapter titled, "Decorative Processes," under the subheading, "Fired Decorations," as follows:

* * * Enamels for glass decoration consist of very low-melting glasses: Colorless, opaque, or colored, applied in a very finely pulverized form by sprinkling or dusting upon the surface. * * *

The witness was interrogated by the court with reference to glass that has the color throughout, from top to bottom, or where the color was not applied to the surface. His testimony as to such glass is as follows:

CHIEF JUDGE OLIVER: What term would you apply to glass which has a color throughout from top to bottom?

THE WITNESS: Colored glass, nothing more, or stained glass.

CHIEF JUDGE OLIVER: And where the color is not given by application to the surface?

THE WITNESS: That is colored or stained glass.

The witness then expressed agreement with the statement appearing in the New International Encyclopaedia (volume 10) on the subject of "Glass," that "Colored glass is made ordinarily like any others, by the addition of dyes (generally metal oxides) to the molten charge."

The significance of the foregoing testimony, relating to the coloring of glass, is its substantial agreement with testimony in the "previous case," relating to the composition or makeup of the articles in question. That pertinent testimony is set forth in the concurring opinion of our decision in C. D. 1521, *supra*, and was elicted from plaintiff's witness, Philip J. Fiumara, who also appeared on behalf of plaintiff in the present case. His appearance herein was for the purpose of correcting or clarifying statements that he had made in "the previous case." His first explanation relates to the terms "enamel glass" and "glass enamel." After stating that the two terms do not mean the same thing to him, he added that "Glass enamel is a type of enamel for the purpose of applying and covering other objects, like the dial of watches, lettering on glass," while "enamel glass" is an expression that he "always used * * * in conjunction with tile, enamel glass tile," like the articles in question.

Referring to the term "smalti" (erroneously spelled "smalt" in C. D. 1521, *supra* (p. 205)), the witness stated that "We use it in speak-

ing Italian in the trade with my men. The implication is it is enamel glass tile." In speaking with people who do not understand the Italian language, "smalti" is referred to "by different terms, whatever may occur to us; enamel glass tile, vitreous enamel tile, Venetian enamel tile. Venetian would indicate its origin; glass mosaic tile, which indicates its application, its use." (R. 39–40.) That variety of terms, used by the witness, is employed in talking with architects about the merchandise in question, but in most of the inquiries from lay people, "they call it colored glass tile, not knowing its origin." The witness concluded his testimony with the statement that he has always regarded, and has always known, the articles in question as enamel glass tiles.

Plaintiff's supplementary testimony, as hereinabove outlined, contains nothing to cause any change in, or modification from, our decision in "the previous case." Accordingly, we adhere thereto and repeat by reference everything that was stated in our opinions in C. D. 1521, *supra*, holding the articles in question to be properly classifiable under paragraph 218 (f), as amended, *supra*, and dutiable thereunder at the rate of 50 per centum ad valorem, as assessed by the collector.

The protest is overruled, and judgment will be rendered accordingly.